H.T.A., LTD., Plaintiff-Appellee, v. W.W. LUXION, Defendant-Appellant (American National Bank and Trust Company of Chicago, Trustee, Defendant).

First District (6th Division)   No. 1—90—1521

Opinion filed March 22, 1991.

Querrey & Harrow, Ltd., of Chicago (Paul T. Lively, of counsel), for appellant.

Barnett, Bornstein & Blazer, Ltd., of Chicago (Harvey Barnett and Martin D. Tasch, of counsel), for appellee.

PRESIDING JUSTICE RAKOWSKI delivered the opinion of the court:

Plaintiff-appellee H.T.A., Ltd. (HTA) contracted to purchase a medical center from defendant-appellant W.W. Luxion (Luxion). Luxion was to construct the medical center on land that he owned. During construction of the medical center, it was agreed by HTA and Luxion that certain extras and change orders would be incurred. Luxion, however, claimed an additional $286,000 was owed for extra work, which HTA disputed. Luxion therefore refused to close the deal unless these claims were satisfied. HTA commenced an action for specific performance in May of 1986, to proceed with the closing.

The parties later agreed to settle the dispute and entered into the agreed order that forms the basis of this appeal. Pursuant to that order, HTA, prior to closing, posted letters of credit in the amount of some $350,000. Under the agreement, Luxion could not cash and call the security either until there was a final determination of liability, or HTA failed to renew the security prior to 30 days before the security was set to expire. In 1990, when HTA failed to extend the security within the applicable time frame, Luxion sought to cash the letters of credit. HTA sought relief, requesting that the court enjoin Luxion from cashing the letters of credit and that the court order Luxion to accept extension of the letters. The circuit court granted HTA relief. The court initially allowed Luxion to cash the letters, but ordered that the proceeds be turned over to the clerk of the court. Then, the court ordered Luxion to accept replacement letters of credit. Subsequently, the funds held by the clerk of the court were returned to the Boulevard Bank National Association, which issued the letters. The underlying action remains pending, and Luxion appeals the order of the circuit court with respect to the security. We affirm.

The agreed order between the parties provided:

"Prior to closing Plaintiff [HTA] shall deposit in the Escrow a surety bond (from an insurance company with a Best Company Rating of A+ or better) or post an irrevocable strait [sic] letter of credit in the amount of $350,000.00 (issued from a bank mentioned in the escrow or equivalent bank) to secure a judg-

ment, or any portion thereof, in favor of defendant W.W. Luxion (Luxion) with respect to his claims (without prejudice to Plaintiff's rights to contest said claims) *** Luxion shall not be entitled to cash or call upon the same until there has been a final determination of Plaintiff's liability to Luxion, if any, and a final nonappealable order is entered as to such liability. The expiration date of the above security shall be extended during the litigation or Luxion shall have the right to cash and call the security in the event the security is not renewed prior to thirty days before the expiration of the security ***."

The initial letters of credit were renewed in both 1987 and 1988. In both instances, HTA failed to extend the security prior to 30 days before expiration, Luxion made demand within the 30-day period prior to expiration, and the letters were renewed within the 30-day period. On May 7, 1990, Luxion sent a letter to HTA demanding that the letters of credit be extended and that Luxion receive notification of extension prior to May 21, 1990. HTA commenced to make arrangements with the bank to have the letters extended, and the bank indicated that the security would in fact be extended. As Luxion did not receive notice of extension from HTA prior to the 21st of May, Luxion delivered an affidavit to the bank in an attempt to cash the letters of credit. The bank, however, declined this request because the affidavit did not comply with the requirements of the letters.

On May 22, 1990, Luxion again sent a letter to HTA (in fact the letter was delivered to HTA's counsel although HTA did not receive the letter until May 24, 1990). This letter stated that if Luxion did not receive evidence of extension or renewal "prior to May 24, 1990," Luxion would cash the letters of credit.

On May 23, 1990, counsel for HTA spoke with counsel for Luxion. Counsel for Luxion was informed that the bank was prepared to extend the letters of credit, but that as Luxion had made a demand on the letters to the bank, the bank required that the demand be withdrawn simultaneous to the extension of the letters. Counsel for Luxion, however, indicated that he was not required to withdraw his demand. Counsel for the parties engaged in a conversation to the same effect the next day, the 24th of May, and a letter from a representative of the bank, dated May 24, 1990, also appears in the record. This letter indicates that the bank was fully prepared to extend the letters if only Luxion would withdraw its prior demand.

Luxion then delivered an affidavit (on May 24) to the bank which did comply with the requirements of the letters. HTA filed an emergency petition for temporary restraining order and preliminary injunc-

tion on May 29, 1990. On that date, the court permitted Luxion to cash the letters, but required that the proceeds be deposited with the clerk of the court. On the 31st of May, 1990, the court conducted a hearing on the matter, and ordered Luxion to "accept new letters of credit to replace the cashed letters." This is the order from which Luxion appeals.

The first issue we address is whether the trial court's order of May 31, 1990, may properly be considered an injunction, so as to provide this court with appellate jurisdiction.

■■ Illinois law is clear that there can be no appeal from a nonfinal order unless such an appeal is specifically authorized by the supreme court rules. (Ill. Const. 1970, art. VI, §6; *People ex rel. Scott v. Silverstein* (1981), 87 Ill. 2d 167, 171, 429 N.E.2d 483.) Supreme Court Rule 307(a)(1) (134 Ill. 2d R. 307(a)(1)) provides in relevant part that appeal may be taken from an interlocutory order "granting, modifying, refusing, dissolving, or refusing to dissolve or modify an injunction." HTA contends that the May 31, 1990, order may not be considered an injunction and, thus, Luxion is not entitled to appeal the order.

■■ To determine what constitutes an appealable injunction under Rule 307(a)(1), the court is to look to the substance of the action, not the form. (*Bohn Aluminum & Brass Co. v. Barker* (1973), 55 Ill. 2d 177, 180, 303 N.E.2d 1.) As the supreme court observed in *In re a Minor* (1989), 127 Ill. 2d 247, 260, 537 N.E.2d 292: "An apple calling itself an orange remains an apple." As such, HTA's argument that the order in this case is not styled an injunction, and that, therefore, the order is not an injunction is not persuasive. In fact, the court in *Lake Shore Racquet Club, Inc. v. Fireman's Fund Insurance Cos.* (1980), 91 Ill. App. 3d 1118, 415 N.E.2d 625, which HTA cites in support of this argument, also observed that "[w]hether an action by a trial court falls within the [Rule] 307 criteria is determined by looking at the substance rather than the form of the order." 91 Ill. App. 3d at 1121, citing *Bohn Aluminum & Brass Co.*, 55 Ill. 2d at 180.

■■ ■ An injunction may be defined as " 'a judicial process, by which a party is required to do a particular thing, or to refrain from doing a particular thing, according to the exigency of the writ, the most common sort of which operate as a restraint upon the party in the exercise of his real or supposed rights.' " (*In re a Minor*, 127 Ill. 2d at 261, quoting *Wangelin v. Goe* (1869), 50 Ill. 459, 463.) Here, the order of May 31, 1990, is clearly injunctive in nature. HTA's petition was styled, in part, as a temporary restraining order. More importantly, the order clearly required Luxion to "do a particular thing"

(accept the replacement letters of credit) which operates as a constraint on Luxion's real or supposed rights (under the agreed order). The result obtains that Luxion may properly appeal the order of May 31, 1990.

In resolving whether there is a sufficient basis to sustain that order, we look to the criteria involving the issuance of preliminary injunctive relief. One seeking the issuance of a preliminary injunction must establish each of the following elements: (1) he possesses a clearly ascertainable right or interest which needs protection; (2) he has no adequate remedy at law; (3) irreparable harm will result if the preliminary injunction is not granted; and (4) he has a likelihood of success on the merits. (*The Instrumentalist Co. v. Band, Inc.* (1985), 134 Ill. App. 3d 884, 891, 480 N.E.2d 1273.) Additionally, the trial court must conclude that the benefits of granting the injunction outweigh the possible injury that the opposing party might suffer as a result thereof. (*Gannett Outdoor v. Baise* (1987), 163 Ill. App. 3d 717, 721, 516 N.E.2d 915.) The purpose of granting a preliminary injunction is to preserve the status quo. (*Summit Electric Co. v. Mayrent* (1974), 17 Ill. App. 3d 545, 550, 308 N.E.2d 313.) The status quo to be maintained is the last, actual, peaceable, uncontested status which preceded the pending controversy. *Instrumentalist Co.*, 163 Ill. App. 3d at 721.

An examination of the preceding law applicable to the granting of preliminary injunctions supports the conclusion that the trial judge did not abuse his discretion in ordering Luxion to accept the replacement security. HTA's rights under the agreed order were ascertainable and in need of protection. Under the circumstances, no adequate remedy at law existed, and if Luxion were to retain the cashed security, HTA would be irreparably harmed. This is because HTA would need to satisfy the bank immediately, while being left with the burden of proving Luxion was not entitled to compensation at a later date. HTA, moreover, demonstrated a likelihood that it would succeed on the merits of its claim under the agreed order due to its unchallenged and uncontradicted evidence.

Relatedly, we are satisfied that the benefits of granting the injunction outweighed the possible injury to Luxion. The cost of the bond to facilitate the trial court's ruling was a mere $10,000, while, as indicated, in the event the trial court had ruled for Luxion, HTA would have been forced to satisfy the bank in an amount of over $350,000. The only possible injury to Luxion would be that he did not receive immediate possession of the cashed security. It is to be remembered, however, that the purpose of the agreed order was to se-

cure satisfaction of Luxion's claim against HTA in the event that Luxion was entitled to recovery, a circumstance yet to be established. Thus, it is clear that the order of the trial court maintained the last, peaceable status preceding the immediate controversy. We therefore are convinced that the trial court's action satisfies an analysis of whether injunctive relief was proper.

Our conclusion that the trial court's order was proper is also rested upon a close examination of the facts which the parties presented to the trial court. It is HTA's contention that Luxion had no right to cash and call the security because it was Luxion's refusal to withdraw its demand from the bank which rendered HTA unable to extend the security.

In determining whether there was a sufficient basis for the trial court to find in favor of HTA below, we are guided by the rule enunciated in the case of *Yale Development Co. v. Oak Park Trust & Savings Bank* (1975), 26 Ill. App. 3d 1015, 1020, 325 N.E.2d 418, which provides: "Delays and nonperformance while they amount to a failure to perform are excused where performance is prevented by the other party to the contract."

As discussed *supra*, it is clear from the wording of the contract that HTA's failure to extend the security prior to thirty days before the expiration of the security triggered Luxion's right to cash and call the security. The record demonstrates that Luxion made its first demand in a letter dated May 7, 1990. Though this letter was returned undelivered to Luxion, HTA admits that it was aware of the demand, as HTA's counsel sought to have the security renewed prior to the 21st of May (pursuant to the demand). The security was not in fact extended in accord with the demand, and Luxion in fact made a demand on the bank to cash and call. Luxion's affidavit to the bank apparently did not meet the requirements imposed by the letters themselves, and, thus, Luxion needed to make a new demand on HTA, the demand that evidence of extension be received "prior to May 24."

At issue here, however, is only whether Luxion was entitled to cash and call based on the second demand. That demand effectively gave HTA the right to extend the security prior to the 24th. HTA argues that HTA could have done so, but was prevented from doing so only by Luxion's refusal to withdraw its prior demand from the bank. The evidence bearing on this question primarily consists of a telephone conversation, on the 23rd of May, during which HTA's counsel informed Luxion's counsel that the bank was prepared to extend the letters of credit on the condition that Luxion withdraw his demand on

the security. Also, there is a letter from a representative of the bank, dated May 24, 1990, which clearly states that the bank was willing to extend the security if Luxion would withdraw the demand. Luxion's counsel took the position that he was not required to withdraw the demand, and did not do so, but rather cashed and called the security.

Luxion argues that the evidence clearly establishes that HTA was unable to extend the letters until the 24th, and thus, as HTA did not extend the security "prior to" the 24th pursuant to the demand, Luxion was entitled to cash and call. While we would agree that if the evidence established that HTA was unable to extend the security until a time after that allowed for in the demand, Luxion would be entitled to cash and call, we disagree that the evidence establishes this. While the evidence of the bank's letter, upon which Luxion relies in making this argument, clearly establishes that as of the 24th the bank was willing to extend the security, this does not establish that the bank was unwilling to do so "prior to" the 24th.

It is important to note that the evidence put forth suggesting that the bank could have extended the security was both unchallenged and uncontradicted. As such, taking into account the summary nature of the proceedings, we are unprepared to say that the trial court had an insufficient basis to enter the order or that the trial court abused its discretion.

We wish to make one final observation. It is apparent that the agreed order gave Luxion the right to cash and call the security if HTA should fail to extend the security within the agreed time period, which HTA has failed to do on three occasions. As no action of Luxion's prevented HTA from extending the security with respect to the initial 1990 demand (the demand upon HTA to extend "prior to May 21") and the demand provided HTA a reasonable time to comply, it appears that Luxion would have been entitled to cash and call with respect to this demand had Luxion satisfied the provisions of the letters. Were we reviewing an order requiring Luxion to accept replacement based on the initial demand, our result would likely be different. This final observation, we trust, will be remembered by the parties if and when the replacement security is to be extended in the future.

For all of the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

McNAMARA and EGAN, JJ., concur.